1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8

9   JAMES BROWN,

10          Plaintiff,                    No. C 07-2743 PJH

11       v.                          **ORDER GRANTING MOTION FOR**
                                     **SUMMARY JUDGMENT IN PART AND**
12                                   
    STATE FARM MUTUAL AUTOMOBILE     **DENYING IT IN PART**
13  INSURANCE COMPANY,

14          Defendant.
    _____/

15

16          Defendant's motion for summary judgment came on for hearing before this court on

17  December 3, 2008.  Plaintiff appeared by his counsel John T. Bell and Curtis E. Allen, and

18  defendant appeared by its counsel Stephen P. Ellingson and Jamie A. Radack.  Having

19  read the parties' papers and carefully considered their arguments and the relevant legal

20  authority, and good cause appearing, the court hereby GRANTS the motion IN PART and

    DENIES it IN PART.

21
                                    **BACKGROUND**
22
            Plaintiff James Brown filed the complaint on January 5, 2007, in the Superior Court
23
    of California, County of Alameda.  On May 24, 2007, defendant State Farm Mutual
24
    Automobile Insurance Company ("State Farm") removed the action pursuant to 28 U.S.C.
25
    §§ 1332(a) and 1446(b), alleging diversity jurisdiction.
26
            In January 2006, plaintiff purchased a 2004 Harley Davidson Road King motorcycle,
27
    VIN 1HD1FBW324Y727307.  He states in his declaration filed in opposition to State Farm's
28
    motion that he bought the motorcycle from Antjuan Erving for $39,500, and that as of the

date of the declaration (November 10, 2008), he has paid Erving approximately $22,000 of the total amount.

Plaintiff claims that shortly after purchasing the motorcycle, he registered it with the California Department of Motor Vehicles ("DMV").  He also added the motorcycle to his existing State Farm policy, and provided State Farm with a copy of the motorcycle's appraisal.  He asserts that he received a registration document from the DMV showing that the motorcycle was registered in his name.[1]  State Farm's records show that plaintiff added the motorcycle to his existing policy on February 1, 2006.  The policy included coverage for theft.

The appraisal that plaintiff submitted to State Farm when he purchased the insurance states that it was prepared by Eric Dobinson, the Executive Director of A to Z Appraisers, and is dated January 20, 2006.  The appraisal is addressed to plaintiff and confirms that he requested the appraisal.

The appraisal states that the inspection took place in Vallejo, California, on January 7, 2006.  The appraised value is stated as $42,740.  The appraisal indicates that the motorcycle had chrome wheels, rotors, and a pulley from Arlen Ness.[2]  The appraisal expired in April 2006.  The photograph on the first page of the appraisal shows a motorcycle with a "white pearl" body with yellow and orange sort of flame things painted on it.  Plaintiff states in his declaration that the motorcycle pictured in the photo in the appraisal is the motorcycle that he bought from Antjuan Erving.

Plaintiff also states in his declaration that he parked the motorcycle at a friend's house in Oakland, California, on Monday, May 1, 2006, and discovered on May 3, 2006, that it had been stolen.  Also on May 3, 2006, he contacted State Farm and the Oakland

---

[1] However, the DMV records obtained by State Farm during its investigation of plaintiff's claim indicate that the registered owner was Maria Puicon.  Moreover, no evidence of the sale was ever supplied to the DMV.

[2] Arlen Ness, a motorcycle customizer and race shop, also builds custom motorcycles. The company is headquartered in Dublin, California.  See http://www.arlenness.com (lasted visited December 12, 2008).

1   Police.  On May 5, 2006, he completed a "Citizen Crime Report," which he submitted to the

2   Oakland Police Department

3       Plaintiff asserts further that on May 7, 2006, he completed an "Affidavit of Vehicle

4   Theft" ("the Affidavit") and turned the form into State Farm.  Plaintiff claims in his

5   declaration that he answered the questions on page 1 of the Affidavit, and left page 2 blank

6   except for the signature line.  After he had completed page 1 and signed page 2, he

7   dropped the Affidavit off at his insurance agent's office in Berkeley, California.  He states

8   that other than filling out page 1 and signing page 2 of the Affidavit, he did not write

9   anything else or provide any other information to anyone at State Farm at the time he

10   submitted the Affidavit.

11       The Affidavit states on page 1 that the motorcycle was worth $42,740, and on page

12   2 that the purchase price was $39,500.  Also on page 2, the lines for date of purchase and

13   name of seller were left blank.  In addition, also on page 2, the Affidavit states that plaintiff

14   paid cash for the motorcycle, that there was no balance due, that there were no loan

15   payments, that there was no lien holder, and that there were two keys in plaintiff's

16   possession.

17       State Farm acknowledged the claim on May 10, 2006.  On June 19, 2006 (possibly

18   June 20, 2006), plaintiff gave a recorded statement ("the recorded statement") to a State

19   Farm claims adjuster, Keith Dupart.  In the recorded statement, plaintiff stated that he had

20   parked the motorcycle at his friend Dwayne Armstrong's home (474 60th Street in Oakland)

21   after work on Monday, and that when he went to pick it up on Wednesday, it was gone.  He

22   stated that he often parked the motorcycle in front of Armstrong's vehicle in his carport, and

23   it would have been difficult to pull the motorcycle out of the parking stall with Armstrong's

24   car blocking it.

25       Plaintiff stated that he bought the motorcycle from his friend "Antjuan" (spelled

26   "Antoine" in transcription of recorded statement).  He couldn't remember Antjuan's last

27   name.  He stated that he had paid "like 38" for the motorcycle, which included $22,000 in

28   cash, and an $11,000 2000 STS Cadillac, and had also done some work for Antjuan.

3

United States District Court

For the Northern District of California

Plaintiff didn't have any paperwork (other than the DMV registration) reflecting his purchase of the motorcycle, or the purchase or sale of the Cadillac that he allegedly traded to Antjuan as part of the purchase price for the motorcycle.

Plaintiff claimed that his girlfriend had given him the $22,000 in cash, although he apparently never provided State Farm with any documentation of cash withdrawals by himself or his girlfriend.  Plaintiff stated that he thought his girlfriend had obtained some of the cash from refinancing her house.   Plaintiff's girlfriend, Shana Hollished, states in her declaration that she has "given Mr. Brown tens of thousands of dollars for the purchase of two motorcycles and other miscellaneous things," and that in January 2006, she "gave Mr. Brown several thousand dollars toward the purchase of a 2004 Harley Davidson Road King."

Plaintiff stated in the recorded statement that he gives his girlfriend her about $700 a month for the mortgage payment and "bills and everything."  He also referred to an additional source of income, which is buying and selling cars through Copart Auto Auctions. When asked again how he could afford what was basically a $42,000 motorcycle on his salary of $800 a week ($250 of which was garnished for child support), he reiterated that he did not pay the entire price in cash – that he had paid $22,000 in cash, traded a car, and done some work for the seller.

Plaintiff also stated that the motorcycle had two sets of keys, and that he had both sets in his possession.  When asked about the appraisal, plaintiff stated that the prior owner of the motorcycle had obtained it (not that he himself had obtained it).

Plaintiff states in his declaration that he never told anyone at State Farm or anyone else that he had paid for the motorcycle in full in cash, or that there was no balance due on the motorcycle, or that there were no loan terms associated with the purchase of the motorcycle, or that his account was or was not past due on the motorcycle.  He claims that during the June 20, 2006, telephone conversation with State Farm investigator Keith Dupart (presumably this is a reference to the recorded statement), he told Mr. Dupart that he still owed money on the motorcycle.

United States District Court

For the Northern District of California

1    State Farm states that during the course of its investigation, it learned that the legal

2  owner of the motorcycle was neither plaintiff nor his friend Antjuan, but a Maria Puicon.

3  Although plaintiff stated at one point that he did not know what Maria Puicon's relationship

4  was with Mr. Erving, both Mr. Erving and Ms. Puicon state in their respective declarations

5  filed in opposition to State Farm's motion that they have a "dating" relationship, and have

6  three children together.

7    Mr. Erving states that he has known plaintiff for approximately 20 years, and

8  considers him "a family member." Both Mr. Erving and Ms. Puicon state that in 2005, the

9  two of them purchased a motorcycle from Bob Dron Harley Davidson of Oakland ("Bob

10  Dron Harley"). The VIN number of that motorcycle is the same as the VIN number of the

11  motorcycle at issue in this litigation. State Farm investigator Ada Lau states in her

12  declaration that Bob Dron Harley confirmed the sale of the motorcycle to Ms. Puicon, as a

13  used former rental.

14    Mr. Erving states that the motorcycle was a gift to him, but that Ms. Puicon retained

15  title in her name because she could get more favorable financing terms. Ms. Puicon

16  confirms that title was held in her name, adding that she does not ride motorcycles and that

17  this particular motorcycle was purchased as a gift for Mr. Erving.

18    Both Mr. Erving and Ms. Puicon state that after the purchase, Mr. Erving had "a

19  significant amount of custom work performed on it." Both confirm that the motorcycle

20  pictured on the front of the appraisal is the motorcycle that they purchased and that Mr.

21  Erving had customized.

22    Both state that in January 2006, with Ms. Puicon's permission, Mr. Erving sold the

23  motorcycle, "pursuant to a verbal agreement" to plaintiff, for $39,500; and that as of the

24  date of their declarations (November 8, 2008, and November 10, 2008, respectively),

25  plaintiff had paid $22,000 of the purchase price. Mr. Erving also states that on January 17,

26  2006, he filed documents with the DMV regarding the sale of the motorcycle to plaintiff, and

27  that the motorcycle was registered in plaintiff's name as of that date.

28    On February 22, 2007, State Farm investigator Ada Lau received one key to the

United States District Court

For the Northern District of California

stolen motorcycle from another State Farm investigator, Victor Liu.  Ms. Lau states further that she spoke with Maria Puicon on March 2, 2007, that Ms. Puicon confirmed that she was the prior owner of the motorcycle, and had sold it to plaintiff for $39,500.  According to Ms. Lau, Ms. Puicon said she had not advertised the motorcycle, and had found plaintiff "by word of mouth."  She stated that plaintiff paid $10,000 down, and had paid a total of $20,000 as of that date, and that they had a verbal agreement, with nothing in writing. Ms. Lau states further that Ms. Puicon told her that she (Puicon) had obtained the appraisal, and had given it to plaintiff.

Also on March 2, 2007, Ms. Lau spoke to the service department of Bob Dron Harley in Oakland, and asked them to fax copies of any service records they had for the motorcycle.  Ms. Lau says that Alex Dikitanan at Bob Dron Harley told her that Maria Puicon had had the Harley serviced there four times, but that they had no record of plaintiff having had the Harley serviced there.

In an October 9, 2006, letter to plaintiff's counsel John Bell, Mr. Dupart stated that State Farm had not yet been able to resolve the claim, and was still waiting for previously requested information regarding phone records for May 3, 2006, contact information for previous owner of the motorcycle, documentation regarding the financing of the motorcycle, and the keys to the motorcycle.

In an October 24, 2006, letter to State Farm, Mr. Bell stated that "Ms. Puicone [sic] is the legal owner of the motorcycle and [plaintiff] Mr. Brown is the registered owner of the motorcycle."  He added that "Ms. Puicone [sic] and Mr. Brown have a verbal agreement regarding his payments toward the purchase of the bike.  The verbal agreement is organic in nature, i.e., the payments may fluctuate in any given month."

On April 3, 2007, State Farm investigator Terra Stone wrote to attorney Steve Toschi, requesting his assistance in conducting an examination under oath ("EUO") of plaintiff, and requesting that Mr. Toschi contact her as soon as possible with regard to whether he would accept representation.

In this letter, State Farm listed a number of the discrepancies and inconsistencies

6

United States District Court

For the Northern District of California

1    that remained with regard to plaintiff's claim:

2        –    In the Affidavit, plaintiff stated he purchased the motorcycle for $39,500.  In

3    the recorded statement, he said he purchased it for $38,000.

4        –    In the recorded statement, plaintiff stated he purchased the motorcycle from

5    Antjuan (spelled "Antoine"), last name unknown.  Per CVR, the prior owner of the vehicle

6    was Maria Puicon, and "Antoine" was not listed.  Ms. Puicon told State Farm she had sold

7    the motorcycle to plaintiff for $39,500.

8        –    In the recorded statement, plaintiff said he paid $22,000 cash to "Antoine" for

9    the motorcycle.  Per Ms. Puicon, plaintiff paid her $20,000 cash for the motorcycle.

10       –    In the recorded statement and Affidavit, plaintiff stated he had two keys to the

11   motorcycle.  However, he provided only one key to State Farm.

12       –    Ms. Puicon stated that she was the person who obtained the appraisal on the

13   motorcycle, and that she gave a copy to plaintiff.  The appraisal itself states that plaintiff

14   requested the appraisal.  In his recorded statement, plaintiff stated that the prior owner had

15   the appraisal done, but did not provide the name of the person who did the appraisal, or the

16   name of the person who requested it.

17       –    In his recorded statement, plaintiff stated that he parked the motorcycle at the

18   residence of a friend, Dwayne Armstrong, 474 60th Street, Oakland.  State Farm's

19   research did not confirm a Dwayne Armstrong living at that address.[3]

20       –    State Farm requested that plaintiff provide his cell phone records, but he

21   claimed he couldn't provide any records because the cell phone company, Metro PCS,

22   does not provide itemized phone records.

23       –    The appraisal states that it was done on January 6, 2006, for plaintiff.

24   However, plaintiff stated in the recorded statement that he did not purchase the motorcycle

25   until February 2006.

26       –    All servicing records from Bob Dron Harley for the motorcycle are in the name

27   _____

28       [3]  Plaintiff has filed a declaration by Duane Armstrong stating that he lived at 474 60th
     Street, in Oakland, in May 2006

of Maria Puicon.  Plaintiff stated that he purchased the motorcycle in February 2006.

However, the date of the last servicing at Bob Dron for Ms. Puicon was on February 23,

2006.  Bob Dron has no records for servicing for plaintiff.

–    CVR indicates "vehicle value" of $1000.

–    Per CVR, transfer of title was not completed pending "statement of facts."

–    Registration for the motorcycle was issued to Bob Dron Harley on April 27,

2004.  Registration was then issued to Maria Puicon on April 21, 2005, sale price $14,450,

odometer 12,310.

–    DMV records do not reflect the sale of the motorcycle to plaintiff.

On May 10, 2007, Mr. Toschi wrote a letter to Terra Stone at State Farm

summarizing the results of his investigation to date, and stating that based on the

numerous contradictions in the case, State Farm would be justified in proceeding with an

EUO of plaintiff, and also of Ms. Puicon (the registered owner of the motorcycle).

Mr. Toschi then wrote Mr. Bell to advise him that an EUO of plaintiff had been

scheduled for May 16, 2007, and also requesting that plaintiff bring various documents with

him.  On May 14, 2007, Mr. Bell wrote Mr. Toschi to say that plaintiff would not appear for

the EUO.  Mr. Bell stated that because plaintiff had filed a civil action, he was required to

appear only once, for a deposition in that case (the present case).  Mr. Bell claimed that

State Farm had waived its right to request an EUO because it failed to do so before plaintiff

filed his lawsuit.

On May 15, 2007, Mr. Toschi responded that if plaintiff did not appear for the EUO

on May 16, 2007, State Farm would treat that as a violation of the terms and conditions of

the insurance contract (referring to the requirement that a policyholder cooperate with the

investigation of a claim).  Plaintiff did not appear.

On May 17, 2007, Mr. Toschi wrote Mr. Bell to say he and Ms. Lau were present the

day before for the EUO, but that plaintiff had not appeared.  He stated that State Farm had

attempted to coordinate the dates with Mr. Bell's office, to no avail. He stated that the EUO

had been rescheduled for May 24, 2007, and that if plaintiff failed to appear, his claim

United States District Court

For the Northern District of California

1  would likely be denied for failure to cooperate, and for material misrepresentations.

2  However, he also offered to schedule another date that was convenient for both sides.

3      Mr. Toschi also attempted to arrange a date for a EUO of Maria Puicon.  She had

4  numerous excuses, even though State Farm offered to hold it near her home, and to pay

5  for a babysitter for her children.  The EUO was set for May 30, 2007.

6      Mr. Bell then wrote Mr. Toschi to say that he would not produce plaintiff for the EUO.

7  On May 23, 2007, Mr. Toschi advised Mr. Bell that plaintiff was required to appear for the

8  EUO, regardless of the filing of the lawsuit.  Plaintiff did not appear at the May 24, 2007,

9  EUO.  Nor did Ms. Puicon appear at the scheduled May 30, 2007, EUO.  Another EUO was

10  apparently set for plaintiff for June 1, 2007, but again plaintiff did not appear.

11      On June 26, 2007, Mr. Toschi wrote Terra Stone at State Farm a follow-up letter,

12  providing a legal opinion on the claim.  After reviewing all the facts, and noting that many

13  were "problematic," he offered the following opinion.  First, he stated that plaintiff and Ms.

14  Puicon had forfeited their right to recover under the policy because they had failed to attend

15  their respective EUOs.

16      Second, Mr. Toschi stated that coverage was void based on the fact that plaintiff had

17  made a number of misrepresentations with intent to misrepresent the facts to State Farm.

18  Specifically, Mr. Toschi refers to the statement in the Affidavit that plaintiff had purchased

19  the motorcycle for $39,500 in cash; that nothing was owed on the motorcycle; and that

20  there was no lien holder; the statement in the recorded statement that he had purchased

21  the motorcycle from "Antoine;" and that there were two keys in his possession.

22      In addition, Mr. Toschi asserted that there were a number of suspicious indicators of

23  fraud – plaintiff had never been placed on the title of the motorcycle, though he claimed to

24  have paid large amounts of money to date for the motorcycle; and Ms. Puicon, though

25  confirming that she was selling the motorcycle to plaintiff, also said the motorcycle had not

26  been entirely paid for at the time of the theft.

27      Mr. Toschi also claimed that false documentation had been submitted concerning

28  the appraisal.  The appraisal stated that it had been performed on January 7, 2006, at

**United States District Court**
For the Northern District of California

plaintiff's behest; Mr. Toschi found this "odd," since plaintiff did not own the motorcycle in January 2006, and the person who did own it, Maria Puicon, said she did not know plaintiff. In addition, Ms. Puicon had told State Farm that she had had the appraisal done.

Mr. Toschi noted that it appeared that plaintiff was saying he had acquired an appraisal on the motorcycle before he ever purchased it, and that this appraisal was then used to obtain the insurance on the motorcycle.  According to Mr. Toschi, the fact that plaintiff brought the appraisal into the insurance agent's office when he bought the insurance was evidence of intent to defraud.

Mr. Toschi concluded that much of plaintiff's story made no sense, and that the failure to disclose the truth about the sales price, the terms of purchase, and the circumstances of the theft seemed designed to keep State Farm from learning the truth.

On August 14, 2007, Mr. Toschi wrote Ms. Puicon, advising her that State Farm had retained him to conduct an EUO of her, and that her failure to appear would result in the denial of the claim as to the motorcycle, for lack of cooperation.  The EUO was scheduled for September 7, 2007.  The same say, Mr. Toschi wrote Mr. Bell to advise that an EUO had been scheduled for plaintiff, also for September 7, 2007.  Plaintiff did appear for his EUO on September 7, 2008, but it appears that Ms. Puicon did not appear for hers.

On September 19, 2007, Ms. Lau called Mr. Erving.  She states that Mr. Erving confirmed that he and plaintiff are friends; and also said that Puicon was his "friend," but would not commit to saying she was his girlfriend.  He confirmed that he had sold the motorcycle to plaintiff.  Ms. Lau asked him how he could have sold the motorcycle if Ms. Puicon owned it, and he said he was the "middleman."  He said plaintiff had paid $22,000 so far, and the selling price was $39,000.

Ms. Lau asked Mr. Erving whether the bike was customized when he sold it to plaintiff, and he said it was.  She asked whether he had done the customization, and he said he had.  He said he had the work done at Richmond Custom Cycles[4] and at Arlen

---

[4] Richmond Custom Cycles was formerly located in Richmond, California, but moved at some point to Pittsburg, California.  The name was changed to Contra Costa Cycles.

United States District Court

For the Northern District of California

1   Ness.  She asked him to describe the details of the customization, and says that he was

2   unable to do so.  She also asked him how much he spent on the customization, and says

3   he told her he did not know.  She asked for the receipts, and he said it had been so long,

4   that he did not have them.  He asked whether he had any pictures of the motorcycle, and

5   he said he would look.  She asked whether he had had an appraisal done on the

6   motorcycle, and he said he had not.  She indicated that he was "fairly vague" when

7   answering her questions.

8          On September 28, 2007, Mr. Toschi wrote to Ms. Puicon stating that State Farm had

9   scheduled an EUO for October 16, 2007.  Ms. Puicon did not appear.

10          On November 2, 2007, Ms. Lau wrote Mr. Erving asking him to send the receipts for

11   the customization of the motorcycle.  Also on November 2, 2007, Ms. Lau wrote Danny

12   Roay of Contra Costa Cycles, asking him to send any receipts and invoices for the

13   customization that had allegedly been done on the motorcycle at Richmond Custom Cycle

14   for either Mr. Erving or plaintiff.

15          On November 27, 2007, Mr. Toschi wrote Mr. Bell advising him that an EUO had

16   been scheduled for plaintiff for December 20, 2007, and requesting that plaintiff bring his

17   cell phone records from January to March 2006.  It is not clear whether this EUO went

18   forward.

19          On November 28, 2008, Mr. Toschi wrote Mr. Erving advising him that State Farm

20   had retained him to conduct an EUO, which had been scheduled for December 20, 2007.

21   Mr. Erving did not appear for this EUO.

22          On December 7, 2007, Mr. Toschi wrote Mr. Bell agreeing to reschedule plaintiff's

23   EUO for January 10, 2008.  Plaintiff did appear for the January 10, 2008 EUO.

24          On January 24, 2008, Mr. Toschi wrote Ms. Lau with a follow-up summary of the

25   status of plaintiff's claim.  The letter began, "This is a claim that is definitely suspicious and

26   it's probably fraudulent." Mr. Toschi opined that the problem was "to sort through the facts

27   and determine whether the insured, Mr. James Brown, has made material

28   misrepresentations with intent to defraud State Farm, or whether Mr. Brown is himself the

11

United States District Court

For the Northern District of California

1   victim of the fraud."

2       Toschi then stated that State Farm must accept that the subject motorcycle (the

3   2004 Harley Davidson Road King motorcycle, VIN 1HD1FBW324Y727307) was insured by

4   State Farm based on the appraisal that plaintiff had brought into the insurance agent's

5   office.  However, he added, the motorcycle was also brought into Bob Dron Harley for

6   service in February (after the insurance was purchased), and at least two employees at

7   Bob Dron had stated that the motorcycle that was brought in was not customized – that it

8   was in stock condition.

9       He noted that State Farm had done everything it could to obtain information about

10  the alleged customization – from Mr. Erving, from Richmond Custom Cycles, from Ms.

11  Puicon, and from the employee at Richmond Custom Cycles who supposedly worked on

12  the bike – but had obtained absolutely no documentation supporting the claim that the bike

13  had been customized.

14      Mr. Toschi stated that at the January 10, 2008, EUO, plaintiff testified that he had

15  originally seen Mr. Erving riding the motorcycle in its stock condition – the color was teal, or

16  "green/blue" as plaintiff described it – and that he had later seen Mr. Erving riding a

17  customized motorcycle.  He said that Mr. Erving told him he had customized the 2004

18  green/blue motorcycle.

19      Mr. Toschi also noted that the person who did the appraisal – Eric Dobinson – stated

20  that he had taken the VIN off the registration, not off the vehicle, because the vehicle's

21  saddlebags obscured the VIN.  Toschi speculated that Mr. Dobinson, or plaintiff, or other

22  individuals, substituted a picture of an appraisal that Mr. Dobinson had done on another

23  motorcycle, while the conspirators (if any) used the VIN and plate of a stock motorcycle

24  that they owned.

25      In addition, Mr. Dobinson said that he performed the appraisal at plaintiff's home in

26  Vallejo, while plaintiff said he himself brought the bike to Richmond Custom Cycles for the

27  appraisal.  According to Mr. Toschi, the areas surrounding plaintiff's residence in Vallejo

28  and Richmond Custom Cycles do not match the area depicted in the photograph of the

**United States District Court**
For the Northern District of California

1  motorcycle in the appraisal.  Mr. Toschi opined that this was consistent with the appraisal

2  being a "cut and paste" job substituting the VIN of the motorcycle that is the subject of

3  plaintiff's claim with the VIN of an older appraisal, that was actually done at another

4  location.[5]

5        Toschi also noted that there were facts favoring plaintiff.  Plaintiff claimed he

6  attempted to register the motorcycle in January 2006, using his mother's address, and

7  DMV records support this attempt.  He claimed that he dropped the motorcycle at

8  Richmond Custom Cycles to get the appraisal done, before he actually bought it, because

9  he wanted to re-negotiate the price if the appraisal did not match the price.  Mr. Toschi

10  added that if one accepts that the motorcycle was never customized, then the question is

11  whether plaintiff was involved in the attempted fraud, or whether someone else defrauded

12  plaintiff.

13        However, Mr. Toschi concluded that there was no evidence to support the scenario

14  that plaintiff himself was the perpetrator of the fraud.  He stated that the only "evidence"

15  implicating plaintiff was that there is no evidence – no paperwork that the motorcycle was

16  ever customized, no records of the thousands of dollars given to plaintiff by his girlfriend, no

17  photos connecting plaintiff with the allegedly customized bike.[6]  He added that the strongest

18  evidence against plaintiff was that he used the appraisal to buy the insurance.

19        Mr. Toschi concluded that "[t]o deny the claim on this record would be inappropriate.

20  We cannot prove that the insured has lied about a single important fact, which is required to

21  void coverage under your company's policy."  Mr. Toschi recommended that the

22  "reasonable choices" for State Farm would be to pay the claim and turn the matter over to

23  _____

24      [5]  Plaintiff subsequently submitted photographs taken of the area around Richmond
Custom Cycles, to show that it matched the background in the photograph of the customized

25  motorcycle in the appraisal.  State Farm moved to strike this evidence because plaintiff had
not previously disclosed it or produced it in discovery, and because it was submitted after the

26  due date for filing plaintiff's opposition to the present motion.

27      [6]  Plaintiff subsequently submitted photographs of Mr. Erving with a customized
motorcycle, which he claimed was the motorcycle at issue in the present action.  State Farm

28  also moved to strike this evidence as untimely and because it had not previously been
disclosed.

United States District Court

For the Northern District of California

1 law enforcement, or to file a declaratory relief action.  In such an action, State Farm could

2 force Mr. Erving and Ms. Puicon to testify, and could also subpoena Mr. Dobinson and the

3 mechanic from Richmond Custom Cycles.

4        Finally, Mr. Toschi opined that State Farm could not deny the claim based on the

5 failure of Mr. Erving and Ms. Puicon to appear for their EUOs.  The policy provides that the

6 insured <u>or</u> the owner of the vehicle must appear for the EUO – not that both must appear,

7 and Mr. Toschi noted that State Farm could not change the language of the policy.

8        On February 15, 2008, Mr. Toschi wrote Ms. Lau another opinion letter, in response

9 to the question whether State Farm should pay plaintiff the value of the motorcycle in its

10 "upgraded" state, or in its "stock" condition.  He stated that he believed that State Farm had

11 established evidence that the motorcycle that was insured by plaintiff had never been

12 upgraded.  Thus, he concluded, since the motorcycle described in the policy had never

13 been upgraded, it was the stock motorcycle, and State Farm was obligated to pay only the

14 value of that motorcycle.

15        Accordingly, on March 7, 2008, State Farm offered to pay plaintiff the stock value of

16 the motorcycle – $16,124.86 – upon receipt of a Vehicle/Vessel Transfer form.  However,

17 plaintiff apparently has never provided State Farm with the proper form.

**DISCUSSION**

19 A.    Legal Standard

20        Summary judgment is appropriate when there is no genuine issue as to material

21 facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

22 Material facts are those that might affect the outcome of the case.  <u>Anderson v. Liberty

23 Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

24 is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  <u>Id.</u>

25        A party seeking summary judgment bears the initial burden of informing the court of

26 the basis for its motion, and of identifying those portions of the pleadings and discovery

27 responses that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp.

28 v. Catrett</u>, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

United States District Court

For the Northern District of California

1  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

2  than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

3  888 (9th Cir. 2003).

4       On an issue where the nonmoving party will bear the burden of proof at trial, the

5  moving party can prevail merely by pointing out to the district court that there is an absence

6  of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

7  moving party meets its initial burden, the opposing party must then set forth specific facts

8  showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

9  R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

10  B.  Defendant's Motion

11       State Farm seeks summary judgment on the first cause of action for breach of

12  contract, on the second cause of action for breach of the implied covenant, and on the

13  claim for punitive damages.

14       1.  Breach of contract

15       State Farm argues that summary judgment should be granted on the breach of

16  contract claim.  State Farm asserts that it had no obligation to pay under the policy

17  because plaintiff made numerous misrepresentations in his claim, and also refused to

18  cooperate with the investigation.

19       The State Farm policy contains the following provisions relevant to this case:

20  **3.  Other Duties Under the Physical Damages Coverages**

21  When there is a loss, you or the owner of the property also shall:

22  . . .

23      d.  provide all records, receipts and invoices, or certified
    copies of them.  We may make copies.

24      e.  answer questions under oath when asked by anyone we
25         name, as often as we reasonably ask, and sign copies of
    the answers.

. . .

26  **5.  Insured's Duty to Cooperate With Us**

27      a.  The insured shall cooperate with us, and when asked,
28         assist us in:

1          (1) making settlements;

2          (2) securing and giving evidence;

3          (3) attending, and getting witnesses to attend, hearings and
           trials.

4

**CONDITIONS**

5

**7.    Concealment of Fraud**

6

There is no coverage under this policy if you or any other person
7       insured under this policy has made false statements with the
        intent to conceal or misrepresent any material fact or circumstance
8       in connection with any claim under this policy.

9          State Farm argues that under the terms of the policy, there is no coverage because

10   plaintiff made false statements with the intent to misrepresent material facts or

11   circumstances in connection with the claim he filed under the policy.  A material

12   misrepresentation by an insured vitiates coverage and legally excuses any alleged non-

13   payment by the insurer.  <u>Cummings v. Fire Ins. Exch.</u>, 202 Cal. App. 3d 1407, 1418-19

14   (1988).  If the misrepresentation concerns a subject reasonably relevant to the insured's

15   investigation, and if a reasonable insurer would attach importance to the fact

16   misrepresented, then it is material.  <u>Id.</u> at 1417.

17          Here, State Farm asserts, plaintiff's EUO testimony established that he made

18   material misrepresentations in his sworn Affidavit.  First, State Farm claims, plaintiff

19   misrepresented his ownership interest in the motorcycle.  According to State Farm, the

20   Affidavit states that plaintiff did not owe a balance, and was not making payments, and that

21   there was no lien holder.  However, in the EUO, plaintiff admitted that he did not own the

22   motorcycle outright, that he still owed a balance, and that Puicon still owned the motorcycle

23   and was a lien holder.

24          State Farm claims that these facts are material because plaintiff may have been

25   claiming entitlement to a portion of the insurance proceeds to which he was not entitled.

26   Moreover, State Farm asserts, by concealing Ms. Puicon's status as a lien holder, he

27   effectively prevented State Farm from contacting her.

28          Second, State Farm claims that plaintiff misrepresented the financial terms of

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  purchase in the Affidavit.  During his recorded statement, he said he paid "like 38," which

2  consisted of $22,000 in cash, an $11,000 Cadillac, and $5,000 in labor.  At the EUO, he

3  testified that he paid $10,000 down, and made subsequent payments of $7,000 and

4  $4,000, for a total of $22,000.  Moreover, contrary to the recorded statement, where he

5  said he had signed the Cadillac over to Mr. Erving, plaintiff later testified that Mr. Erving

6  refused the Cadillac as payment.

7      State Farm contends that the misrepresentations regarding the purchase of the

8  motorcycle are evident from the documentary evidence as well.  Plaintiff stated in the

9  recorded statement that he bought the motorcycle in February, the same day he purchased

10  the policy.  In the EUO, he testified that after he bought the motorcycle, he went to the

11  DMV to transfer the registration, and then obtained the appraisal.  However, the appraisal

12  states that it took place on January 7, 2006.  According to the DMV, plaintiff attempted to

13  register the motorcycle on January 17, 2006.  He obtained the policy on February 1, 2006,

14  two weeks after he attempted to transfer the registration and three weeks after the

15  appraisal.  State Farm asserts that these misrepresentations are material because they

16  related to the question whether plaintiff actually owned the motorcycle that was allegedly

17  stolen.

18      State Farm also argues that the records from Bob Dron Harley also establish that

19  plaintiff misrepresented the purported customization of the motorcycle.  The Repair Orders

20  indicate that the motorcycle serviced in February was "teal," not "white pearl," and was not

21  customized.  In addition, the Bob Dron employees who performed the work suggested that

22  the customized motorcycle shown in the appraisal was not the motorcycle they worked on.

23  Finally, the repair order invoice dated February 23, 2006, was signed by Maria Puicon,

24  three weeks after plaintiff claimed to have bought the motorcycle, and more than a month

25  after he attempted to register it.  State Farm asserts that plaintiff was unable to explain

26  these discrepancies during his EUO, and also specifically denied that the motorcycle could

27  have been repaired at Bob Dron after he allegedly bought it.

28      In addition, according to Arlen Ness, there were no records there for plaintiff, Ms.

17

United States District Court

For the Northern District of California

1   Puicon, or Mr. Erving, despite the fact that the appraisal claimed that the motorcycle had

2   been customized with Arlen Ness parts, and the fact that Mr. Erving claimed that some of

3   the work had been done there.  Nor was Richmond Custom Cycles able to produce any

4   evidence.

5        State Farm argues that the fact that Ms. Puicon had the motorcycle serviced in its

6   stock condition after the alleged custom work was done, and after plaintiff claims he bought

7   the motorcycle, suggests that the motorcycle was never customized – and the lack of

8   documentary records from Arlen Ness and Richmond Custom Cycles backs this up.  State

9   Farm asserts that the misrepresentations regarding the alleged customization are material

10  because they are relevant to State Farm's potential liability under the policy.

11       State Farm also contends that the appraisal itself contains misrepresentations.  Mr.

12  Dobinson told State Farm that he obtained the VIN by looking at the registration, which

13  named plaintiff as the owner.  However, State Farm notes, it would have been impossible

14  for Mr. Dobinson to have used such a registration, because according to the DMV, plaintiff

15  did not even attempt a transfer until January 17, 2008, and the transfer was never

16  completed, so Ms. Puicon remained the registered owner.

17       State Farm asserts that the appraisal is the only document provided by plaintiff to

18  support his claim that the motorcycle, originally purchased by Ms. Puicon in stock condition

19  for $14,450, was worth nearly $43,000 at the time of the loss, based on the value added by

20  customization.  Thus, State Farm argues, the misrepresentations regarding the appraisal

21  were directly related to the value of the motorcycle, which was directly related to State

22  Farm's liability under the policy.

23       Finally, State Farm notes the discrepancy in the number of keys in plaintiff's

24  possession.  While he stated in the Affidavit and in the recorded statement that he had two

25  keys, he turned over only one to State Farm.  Later, in his EUO, he testified that there was

26  only one key.  State Farm argues that the missing key is material because it suggests that

27  the motorcycle was not stolen, but rather was driven away using the other key, which in

28  turn calls into doubt whether there was a theft that would trigger coverage.

United States District Court

For the Northern District of California

1    State Farm notes in addition that plaintiff never provided evidence to prove the

2    material elements of his claim – no evidence supporting his claim that his girlfriend gave

3    him $22,000, or even had $22,000 to give.  There is no evidence that she refinanced her

4    house, or that she (or plaintiff) had the financial resources to purchase a $40,000

5    motorcycle.

6    The court finds that summary judgment must be DENIED on the breach of contract

7    claim.  Much of State Farm's evidence is inadmissible hearsay, and plaintiff's opposition

8    does not reconcile the numerous inconsistencies in his statements.  Triable issues remain

9    concerning, e.g., when and under what conditions plaintiff purchased the motorcycle; what

10   the terms of purchase were; when and under what circumstances the appraisal was

11   performed; and whether the motorcycle that Ms. Puicon and Mr. Erving allegedly sold to

12   plaintiff was customized, and if so, who ordered and paid for the customization.

13   2.       Breach of the Implied Covenant of Good Faith and Fair Dealing

14   State Farm argues that summary judgment should be granted on the bad faith claim.

15   California law recognizes in every contract, including insurance policies, an implied

16   covenant of good faith and fair dealing.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713,

17   720 (2007).  In the insurance context the implied covenant requires the insurer to refrain

18   from injuring its insured's right to receive the benefits of the insurance agreement.  Brehm

19   v. 21st Century Ins. Co., 166 Cal. App. 4th 1225, 1235 (2008).

20          [W]hen benefits are due an insured, delayed payment based on inadequate
            or tardy investigations, oppressive conduct by claims adjusters seeking to
21          reduce the amounts legitimately payable and numerous other tactics may
            breach the implied covenant because' they frustrate the insured's right to
22          receive the benefits of the contract in prompt compensation for losses.

23   Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995) (quotations and citations

24   omitted).

25   Absent an entitlement to policy benefits, a plaintiff may not recover on a bad faith

26   claim, as a matter of law.  Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1148-49 (1990).

27   However, State Farm asserts that even if summary judgment is not granted on the breach

28   of contract claim, summary judgment is warranted on the bad faith claim.

19

**United States District Court**
For the Northern District of California

1    Under California law, an insurer breaches the implied covenant only when it

2  withholds policy benefits unreasonably or without proper cause.  California Shoppers, Inc.

3  v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 54 (1985).  Mere negligence is not sufficient to

4  constitute unreasonable behavior, and does not establish a breach of the implied covenant

5  in an insurance case.  Id.; see also National Life & Accident Ins. Co. v. Edward, 119 Cal.

6  App. 3d 326, 339 (1981).  There must be proof that the insurer failed to discharge its

7  contractual duties "not because of an honest mistake, bad judgment, or negligence, but by

8  a conscious and deliberate act, which unfairly frustrates the agreed common purposes and

9  disappoints the reasonable expectations of the other party, thereby depriving that party of

10  the benefits of the agreement."  Century Surety Co. v. Polisso, 139 Cal. App. 4th 922, 949

11  (2006) (citations and quotations omitted).

12    An insurer denying or delaying the payment of policy benefits due to the existence of

13  a genuine dispute with its insured as to the existence of coverage liability is not liable in bad

14  faith even though it might be liable for breach of contract.  Chateau Chamberay

15  Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346-47 (2001).  A

16  delay in paying a claim is not unreasonable at least until the insurer receives adequate

17  information to process the claim and has time to reach an agreement with the insureds.

18  Nager v. Allstate Ins. Co., 83 Cal. App. 4th 284, 289 (2000) (citing Globe Indemnity Co. v.

19  Superior Court, 6 Cal. App. 4th 725, 730-31 (1992)).  An insurer's mistake in withholding

20  payment on a claim is insufficient to create bad faith tort liability unless the conduct is

21  unreasonable.  Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1280-81 (1994).

22    Here, State Farm contends that it made every effort to investigate plaintiff's claim

23  reasonably and thoroughly.  State Farm argues that it used the Affidavit, various telephone

24  interviews, documents, third-party statements, and the two EUOs in its effort to investigate

25  plaintiff's claim that he had owned a motorcycle worth nearly $43,000, and that it had been

26  stolen.  State Farm claims that plaintiff's responses to its questions, as well as the other

27  evidence it received, revealed misrepresentations, inconsistencies, and contradictions in

28  plaintiff's claim.

1    State Farm notes, however, that despite all the misrepresentations and

2  contradictions, it did not deny the claim outright, as it could have.  Rather, it offered to settle

3  the claim by giving plaintiff the stock value of the motorcycle.  State Farm contends that this

4  shows that far from acting in bad faith, State Farm's actions were reasonable and done in

5  good faith.

6    In opposition, plaintiff argues that he has an actionable bad faith claim, based

7  primarily on State Farm's alleged undue delay in processing the claim.  Plaintiff asserts that

8  he filed the claim in May 2006; that he spoke to a State Farm representative in June 2006

9  and gave him further information about the claim (apparently referring to the recorded

10  statement); that he received only one letter from State Farm from May 3, 2006 (date theft

11  reported) through February 15, 2007 – the letter dated October 9, 2006; that he received a

12  second letter from State Farm on February 16, 2007, advising him that they needed certain

13  documents and the keys to the motorcycle; that State Farm requested on May 7, 2007, that

14  he submit to an EUO; and that State Farm finally offered to pay the stock value of the

15  motorcycle on March 7, 2008, which was a year and ten months after he had filed the

16  claim.

17    Plaintiff claims that Ada Lau's declaration shows that March 2, 2007, was the first

18  day she took any action to investigate the nature of plaintiff's claim.  He also notes that nine

19  months before State Farm filed the present motion, its coverage counsel Steve Toschi

20  concluded that there was no reason that plaintiff's claim should be denied. Thus, plaintiff

21  asserts, it took a year and five months before someone decided that the claim should be

22  paid.  Plaintiff contends that State Farm has offered no reasonable explanation for these

23  delays.

24    Other actions taken by State Farm that plaintiff claims demonstrate bad faith are the

25  offer to pay less than 50% of the claimed value of the motorcycle, despite coverage

26  counsel's recommendation that the claim be paid; the repeated requests for plaintiff's cell

27  phone bills, even though plaintiff told State Farm that his cell phone carrier does not

28  provide itemized bills; the threat to deny the claim because of the actions of third parties

21

United States District Court

For the Northern District of California

1  (e.g., Ms. Puicon, who failed to appear for the EUO); the claim that plaintiff had not

2  contacted the police until May 5, 2006, despite the fact that plaintiff said in his recorded

3  statement that he contacted the police the day he discovered the theft.  Plaintiff argues that

4  based on these facts, State Farm's motion should be denied.

5       The court finds that the motion must be GRANTED.  Plaintiff has not established that

6  State Farm's handling of the claim was unreasonable or done in bad faith.  For example,

7  the evidence does not show, as plaintiff suggests, that no one from State Farm began to

8  investigate the claim until March 2, 2007.  Rather, the investigation began shortly after

9  plaintiff reported the theft.

10      Nor, to take another example, does the evidence show that Mr. Toschi

11 recommended that State Farm pay the entire claim for the customized motorcycle.  Mr.

12 Toschi opined in January 2008 that State Farm could not deny the claim based on lack of

13 coverage, but in a subsequent letter, in February 2008, he recommended that State Farm

14 pay the "stock" value of the motorcycle.

15      Moreover, the delay that plaintiff complains about was largely caused by plaintiff

16 himself – by his inconsistent and incomplete answers to State Farm's inquiries, by his

17 failure to provide documentary evidence, and by his repeated failure to appear for the

18 scheduled EUOs.  Under the circumstances presented by the claim, State Farm was

19 entitled to conduct a thorough investigation, which required considerable time.

20      It is settled in California that an insurer denying or delaying the payment of policy

21 benefits due to the existence of a genuine dispute with its insured as to the existence of

22 coverage liability or the amount of the insured's coverage claim is not liable in bad faith

23 even though it might be liable for breach of contract.  Fraley v. Allstate Ins. Co., 81 Cal.

24 App. 4th 1282, 1292 (2000).  Plaintiff has cited no authority for the proposition that a

25 lengthy investigation, when necessary, constitutes bad faith handling of an insurance claim.

26      3.    Claim for punitive damages

27      State Farm argues that summary judgment should be granted on the claim for

28 punitive damages because plaintiff cannot provide clear and convincing evidence of malice,

United States District Court

For the Northern District of California

1    fraud, or oppression.

2         A claim for punitive damages requires the plaintiff to prove by clear and convincing

3    evidence that the defendant has been guilty of malice, fraud, or oppression.  Cal. Civ. Code

4    § 3294.  "Clear and convincing evidence" is evidence that is "so clear as to leave no

5    substantial doubt" and "sufficiently strong to command the unhesitating assent of every

6    reasonable mind."  In re Angelia P., 28 Cal. 3d 908, 919 (1981).  The law does not favor

7    punitive damages, and they should be granted with caution.  Beck v. State Farm Mut. Auto.

8    Ins. Co., 54 Cal. App. 3d 347, 355 (1976).

9         In a bad faith insurance action, evidence that the insurer has violated its duty of

10   good faith and fair dealing does not, alone, establish that it acted with the requisite intent to

11   justify an award of punitive damages.  Patrick v. Maryland Cas. Co., 217 Cal. App. 3d

12   1566, 1575 (1990).  To establish that the insurer's conduct has gone sufficiently beyond

13   mere bad faith to warrant an award of punitive damages, it must be shown by clear and

14   convincing evidence that the insurer acted maliciously, fraudulently, or with oppression.

15   Mock v. Michigan Millers Mut. Ins. Co., 4 Cal. App. 4th 306, 328 (1992).

16        An insurer's reliance on the advice of counsel also negates allegations of bad faith

17   and malice in claims handling.  State Farm Mut. Auto. Ins. Co. v. Superior Court, 228 Cal.

18   App. 3d 721, 725 (1991).  The defense of advise of counsel is offered to show that the

19   insurer had the proper motive for its action, even if the advice it received is ultimately

20   proved to have been erroneous.  Id.

21        State Farm asserts that its investigation revealed ample grounds on which to base a

22   complete denial of coverage.  State Farm asserts that the misrepresentations,

23   inconsistencies, and contradictions that it uncovered suggest that plaintiff either never

24   owned the motorcycle, or that if he did, it was not worth the nearly $43,000 that he claimed.

25   State Farm contends that this would have been enough for State Farm to deny the claim

26   altogether, but notes that it instead offered to reimburse plaintiff for the stock value of the

27   motorcycle.  State Farm asserts that under these circumstances, plaintiff cannot establish

28   that State Farm acted with oppression, fraud, or malice.

United States District Court

For the Northern District of California

1    In opposition, plaintiff argues that the motion should be denied because State Farm

2    delayed over two years before attempting to settle the claim, considered only the evidence

3    that was unfavorable to plaintiff but not the evidence that favored him, and ignored the

4    advice of its counsel (referring to Mr. Toschi) that there was no evidence that plaintiff had

5    submitted a false claim, and recommending that the claim be honored.

6    The court finds that the motion must be GRANTED.  Plaintiff has not provided any

7    evidence showing that State Farm acted with oppression, fraud, or malice.  State Farm's

8    investigation revealed numerous misrepresentations, inconsistencies, and contradictions,

9    which raised questions regarding the validity and value of plaintiff's claim.  State Farm

10   resolved that dispute pursuant to the advice of its coverage counsel, and offered to pay the

11   stock value of the motorcycle.

12   Here, plaintiff has not established that State Farm acted with bad faith – and has not

13   even raised a triable issue as to that claim.  Thus, it is clear that plaintiff cannot prevail on

14   the punitive damages claim.  Moreover, plaintiff has not provided evidence showing that

15   State Farm acted with oppression, fraud, or malice.

16   Plaintiff's only arguments are that it took more than two years for State Farm to offer

17   to settle the claim, and the offer was for less than 50 per cent of the motorcycle's value;

18   that State Farm was suspicious of plaintiff's claim and treated him as though he was not

19   trustworthy; and that State Farm's counsel in this case took a position that was slightly

20   different from the position of Steve Toschi, the investigating attorney hired by State Farm

21   while it was still investigating plaintiff's claim.

22   However, given the fact that plaintiff was unable to document, for example, his

23   purchase of the motorcycle, or that it had been customized; the fact that plaintiff refused for

24   so long to show up at his examination under oath; and the fact that Mr. Erving and Ms.

25   Puicon refused to cooperate with State Farm in its attempts to schedule EUOs – and also

26   given the fact of the inconsistencies in plaintiff's statements to State Farm – State Farm

27   acted reasonably in questioning him repeatedly and conducting an extensive investigation.

28   In addition, State Farm's offer of payment and coverage, even in light of the unanswered

24

United States District Court

For the Northern District of California

1    inconsistencies strongly supports a finding of no oppression, fraud, or malice.

2    C.      State Farm's Request to Strike Plaintiff's Supplemental Evidence

3            Plaintiff submitted evidence after he filed his opposition (photos and some receipts

4    that allegedly show the customization).  State Farm seeks to strike this evidence as

5    untimely, and also contends that even if the court allows it in, it won't change the outcome.

6    The court has not considered this evidence in ruling on the motion for summary judgment,

7    and therefore DENIES the motion to strike as moot.

8                                          **CONCLUSION**

9            In accordance with the foregoing, the court hereby GRANTS the motion for

10   summary judgment as to the claim of breach of the implied covenant of good faith and fair

11   dealing, and as to the claim for punitive damages, and DENIES it as to the breach of

12   contract claim.

13           As the only claim remaining is the claim for breach of contract, it appears to the

14   court that diversity jurisdiction may now be lacking.  However, before considering whether

15   the case should be remanded to Alameda County Superior Court, the court will give the

16   parties the opportunity to settle the remaining claim.  By separate order, the court will refer

17   this matter to a magistrate judge to hold a settlement conference.  In the event that the

18   parties are unable to reach a settlement, the court may determine that remand is

19   appropriate, pursuant to 28 U.S.C. § 1447(c).

20

21   **IT IS SO ORDERED.**

22   Dated: December 15, 2008                      _____

23                                                 PHYLLIS J. HAMILTON
                                                   United States District Judge
24

25

26

27

28